**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:                                ) | Case No.:  20-43963-399 |
|                                         ) | Honorable Barry S. Schermer |
| **GARBANZO MEDITERRANEAN**  ) | Chapter 11 Proceeding |
| **GRILL, LLC**, *et al.*,      ) | |
|                                         ) | Hearing Date: August 17, 2020 |
|             Debtors[1].             ) | Hearing Time: 10:00 a.m. |
|                                         ) | Hearing Location: Courtroom 5 North |
|                                         ) | St. Louis, Missouri |
|                                         ) | |
|                                         ) | Robert E. Eggmann, Esq. |
|                                         ) | Thomas H. Riske, Esq. |
|                                         ) | Danielle A. Suberi, Esq. |
|                                         ) | Carmody MacDonald P.C. |
|                                         ) | 120 South Central, Suite 1800 |
|                                         ) | St. Louis, Missouri 63105 |
|                                         ) | (314) 854-8600 |
|                                         ) | ree@carmodymacdonald.com |
|                                         ) | thr@carmodymacdonald.com |
|                                         ) | das@carmodymacdonald.com |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
EXISTING BUSINESS FORMS, AND (II) GRANTING RELATED RELIEF**

COME NOW Garbanzo Mediterranean Grill, LLC, Garbanzo Mediterranean Fresh, LLC, Garbanzo Mediterranean Fresh Missouri, LLC and Garbanzo Mediterranean Grill Franchising, LLC, the above-captioned Debtors and Debtors in Possession (the "**Debtors**"), and respectfully state the following in support of this Motion:

1.     The Debtors seek entry of interim and final orders (respectively, the "**Proposed Interim Order**" and "**Proposed Final Order**"):  (i) authorizing the Debtors to (a) continue to operate their cash management system; (b) honor certain prepetition obligations related thereto;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Garbanzo Mediterranean Grill, LLC (8872), Garbanzo Mediterranean Fresh, LLC (8872), Garbanzo Mediterranean Fresh Missouri, LLC (8872), and Garbanzo Mediterranean Grill Franchising, LLC (8872). The address of the Debtors' corporate headquarters is 7700 E. Arapahoe Road, Suite 270, Centennial, CO 80112.

and (c) maintain existing business forms in the ordinary course of business; and (ii) granting related relief. In addition, the Debtors request that the Court (as defined herein) schedule a final hearing within approximately thirty days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Eastern District of Missouri (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81.901(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105, 345, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") and Bankruptcy Rules 6003 and 6004.

## Background

5. The background of this case may be found in the Declaration of James Park in Support of First Day Applications and Motions (the "**First Day Declaration**").

6. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a

2

motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## Relief Requested

**A.     The Cash Management System.**

7.     In the ordinary course of business, the Debtors maintain a cash management system (the "**Cash Management System**").  The Cash Management System summarizes each of the institutions where the Debtors' maintain accounts (the "**Cash Management Banks**") on **Exhibit A** attached hereto.

8.     The Cash Management System is comparable to the centralized cash management systems used by similarly situated companies to manage cash in a cost-effective, efficient manner. The Debtors use the Cash Management System in the ordinary course of their businesses to collect, transfer, and disburse funds generated from their operations and to facilitate cash monitoring, forecasting, and reporting.  The Debtors maintain daily oversight over the Cash Management System and implements cash management controls for entering, processing, and releasing funds. Additionally, the Debtors regularly reconcile the Debtors' books and records to ensure that all transfers are accounted for properly.

9.     The Cash Management System is broken down as follows:

- Garbanzo Mediterranean Grill, LLC is the ultimate parent company for each of the other Debtors, and it maintains two main operating accounts for itself, and one each for Garbanzo Mediterranean Fresh, LLC and Garbanzo Mediterranean Fresh Missouri, LLC.  Particularly, Garbanzo Mediterranean Grill, LLC maintains twenty-one accounts at First Republic Bank, and four accounts at Key Bank;

3

- Debtor affiliate Garbanzo Mediterranean Grill Franchising, LLC maintains one account at Key Bank;

- Debtor affiliate Garbanzo Mediterranean Fresh Missouri, LLC maintains one account at Royal Bank of Missouri; and

- Garbanzo Mediterranean Fresh, LLC does not maintain any accounts in its name.

10. Key Bank has executed a Uniform Depository Agreement with, and is designated as an authorized depository by, the Office of the United States Trustee for Region 13 (the "**U.S. Trustee**").

11. Despite not being included on the Authorized Depository List, both First Republic Bank and Royal Bank of Missouri are insured by the Federal Deposit Insurance Corporation ("**FDIC**"). Further, the Debtors do not customarily maintain account balances equal to or in excess of $250,000.00 (the FDIC deposit insurance cap) in any of the First Republic Bank accounts.

**B.    Business Forms.**

12. The Debtors utilize certain limited preprinted correspondence and business forms, such as letterhead and a number of preprinted checks (the "**Business Forms**"), in the ordinary course of their businesses. While, in general, the Debtors print customized Business Forms such as invoices as they are needed, the Debtors also maintain a stock of certain regularly-used and standardized materials to facilitate efficient processing of their business affairs. The Debtors also maintain books and records to document, among other things, their profits and expenses. To minimize unnecessary additional expenses to their estates, the Debtors request that the Court authorize their continued use of their Business Forms to the limited extent they are preprinted, all as such forms were in existence immediately before the Petition Date, without reference to the

4

Debtors' status as debtors in possession, rather than requiring the Debtors to incur the unnecessary expense, nuisance, and delay of ordering entirely new forms as required under the U.S. Trustee Operating Guidelines.

## Basis for Relief

**I.    The Debtors Should Be Granted Authority to Maintain Their Existing Cash Management System.**

13.    Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of Chapter 11 cases. The U.S Trustee's *Operating Guidelines and Financial Reporting Requirements for Debtors in Possession and Trustees* (the "**UST Operating Guidelines**") require debtors in possession to, among other things:

   a.   establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

   b.   close all existing bank accounts and open new debtor in possession accounts; and

   c.   maintain a separate debtor in possession account for cash collateral.

14.    These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Considering, however, that the Debtors' business and financial affairs are complex and require the collection, disbursement, and movement of funds from multiple franchise and store operations through their bank accounts, enforcement of these provisions of the U.S. Trustee Operating Guidelines during these chapter 11 cases would severely disrupt the Debtors' operations. If the Debtors were required to open new debtor in possession accounts and modify their Cash Management System, such a process would create expense and administrative burdens for the

5

Debtors at a critical time in these cases. Accordingly, the Debtors respectfully request that the Court allow them to operate each of the Bank Accounts listed on **Exhibit A** attached hereto as they were maintained in the ordinary course of business before the Petition Date.

15. Moreover, this Court has authority to waive the strict enforcement of the bank account closing requirements imposed pursuant to the UST Operating Guidelines. Such relief is routinely granted in this district. *See, e.g.*, *In re Foresight Energy LP,* No. 20-41308 (KSS) (Bankr. E.D. Mo. Apr. 7, 2020) [Docket No. 241]; *In re Payless Holdings LLC,* 19-40883 (KSS) (Baknr. E.D. Mo. Apr. 3, 2019) [Docket No. 783]; *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161 (KSS) (Bankr. E.D. Mo. Aug. 14, 2016) [Docket No. 473]; *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo. April 13, 2016) [Docket No. 643]; *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. May 17, 2016); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Apr. 8, 2016).

16. Similarly, cause exists to waive the requirements of Section 345 of the Bankruptcy Code in these cases with respect to any of the Debtors' Bank Accounts held at First Republic Bank and Royal Bank of Missouri. Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agent or instrumentality of the United States or backed by the full faith and credit of the United States," Section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety. This Court may, however, relieve a debtor-in-possession of the Section 345(b) restrictions for "cause."

The Debtors believe that "cause" exists to waive the investment and deposit restrictions under § 345(b) to the extent that the Debtors' cash management deposits and investments do not comply. Such accounts are FDIC insured, and it would be unnecessarily and administratively harmful for the Debtors to restructure their Cash Management System to move their accounts held at First Republic Bank and Royal Bank of Missouri to other banks.

17. Further, the continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes debtors in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) of the Bankruptcy Code also allows a debtor in possession to engage in the ordinary course transactions required to operate its business without additional oversight from its creditors or the court. *See, e.g.*, *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Harbinger, Inc. v. Metropolitan Cosmetic & Reconstructive Surgical Clinic, P.A.*, 124 B.R. 784, 786 (Bankr. D. Minn. 1990) (citing *United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592 (Bankr. M.D. Tenn. 1990)). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Bankruptcy courts within the Eighth Circuit have held that a transaction qualifies as "ordinary course" if it "is of a type that is commonly undertaken within the debtor's industry," *Peltz v. Gulfcoast Workstation Grp. (In re Bridge Information Systems, Inc.)*, 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003).

18. Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter", *see In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987), and have recognized that an integrated cash management system

7

"allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

19. In other large, complex, and well-publicized chapter 11 cases such as these, courts in this district and in other jurisdictions regularly waive the U.S. Trustee Guideline requirements and allow the continued use of cash management systems and prepetition bank accounts employed in the ordinary course of a debtor's prepetition business. *See, e.g.*, *In re Payless Holdings LLC*, No. 17-42267 (KAS) (Bankr. E.D. Mo. May 25, 2017); *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. May 17, 2016); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Apr. 8, 2016); *see also In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015).[2]

## II. Maintaining the Existing Cash Management System Will Not Harm Parties in Interest.

20. Continued use of the Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of

---

[2] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

8

postpetition obligations.[3]  The Debtors respectfully submit that parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of prepetition obligations.

### III. Authorizing the Debtors to Continue Using Debit, Wire, Credit Card, and ACH Payments Is Warranted.

21. The Debtors request that the Court grant further relief from the U.S. Trustee Operating Guidelines to the extent they require the Debtors to make all disbursements by check. In particular, the U.S. Trustee Operating Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement. In the ordinary course of business, the Debtors conduct transactions through ACH transfers and other similar methods.  In addition, a certain percentage of the Debtors' receipts are received through wire transfer payments.  If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, or other similar methods—including their ability to pay associated fees—is impaired, the Debtors may be unable to perform under certain contracts, their business operations may be unnecessarily disrupted, and their estates will incur additional costs.

### IV. Authorizing the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted.

22. As discussed above, implementing the U.S. Trustee Operating Guidelines would interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates in an efficient manner.  Thus, the Debtors respectfully request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as

---

[3] Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors intend to calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

9

accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Cash Management Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided* that any check, draft, or other notification that the Debtors advise the Cash Management Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court.

23.    The Debtors further request that the Court authorize the Cash Management Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.  The Debtors also request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any Bank Account either:  (a) at the direction of the Debtors; or (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Cash Management Banks are not positioned to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

24.    Moreover, the Debtors request that the Court authorize the Cash Management Banks to continue to charge the Debtors the Bank Fees, as applicable, in the ordinary course of

10

business. The Debtors further request that the Court order that liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees.

**V.      The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms.**

25.      The U.S. Trustee Operating Guidelines also require debtors in possession to obtain checks that bear the designation "debtor in possession" on such checks. The Debtors have a limited stock of preprinted checks and will transition to using checks with the designation "Debtor in Possession" in compliance with these requirements as soon as that supply is exhausted and with respect to any new checks the Debtors print.

26.      To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue to use their Business Forms, which includes a small number of checks, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession. The Debtors submit that, given the limited nature of the preprinted Business Forms, parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date. Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and thus, changing forms such as letterhead would be an unnecessary additional expense.

27.      In other large chapter 11 cases, courts in this district and others have allowed debtors to use business forms that were printed prepetition without the "debtor in possession" label. *See, e.g.*, *In re Payless Holdings LLC*, No. 17-42267 (KAS) (Bankr. E.D. Mo. May 25, 2017); *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. May 17, 2016); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Apr. 8, 2016); *see also In re BCBG Max Azria Glob.*

11

*Holdings, LLC*, No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Limited Stores Co.*, No. 17-10124 (KJC) (Bankr. D. Del. Feb. 16, 2017).

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

28. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to: (a) continue to operate their Cash Management System; (b) honor certain prepetition obligations related thereto; (c) maintain existing Business Forms; and (d) continue to perform Intercompany Transactions consistent with historical practice as well as granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

29. Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Proposed Interim Order and the Proposed Final Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or

limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

30. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### No Prior Request

31. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and Proposed Final Order granting the relief requested herein and such other relief as the Court may deem just and proper.

Respectfully submitted,

CARMODY MACDONALD P.C.

By: /s/ *Robert E. Eggmann*
    ROBERT E. EGGMANN #37374MO
    THOMAS H. RISKE #61838MO
    DANIELLE SUBERI #59688
    120 S. Central Avenue, Suite 1800
    St. Louis, Missouri  63105
    (314) 854-8600
    (314) 854-8660 – FAX
    ree@carmodymacdonald.com
    thr@carmodymacdonald.com
    das@carmodymacdonald.com

PROPOSED ATTORNEYS FOR DEBTORS

**EXHIBIT A**

| Bank Name | Address | Account Name | Type of Account | Last 4 digits of account number | Purpose |
|---|---|---|---|---|---|
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 4840 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 4980 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 4899 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 5078 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 4816 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 5979 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 5425 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 6449 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 6159 | |

| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 6035 | |
|---|---|---|---|---|---|
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 5441 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 5409 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 6050 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 6126 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 6217 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 0516 | |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 5029 | Corp-Franchise |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 4949 | Corp-Main |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 5037 | Corp-Payroll |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 6345 | Fresh-Operating |

16

| Bank | Address | Account Holder | Type | Last 4 | Purpose |
|---|---|---|---|---|---|
| *Key Bank | P.O. Box 93885 Cleveland, OH 44101-5885 | Garbanzo Mediterranean Grill, LLC | Checking | 9728 | Fresh-Operating |
| *Key Bank | P.O. Box 93885 Cleveland, OH 44101-5885 | Garbanzo Mediterranean Grill, LLC | Checking | 4011 | Grill-Operating |
| First Republic Bank | 101 Pine Street San Francisco, CA 94111 | Garbanzo Mediterranean Grill, LLC | Checking | 6295 | Missouri-Operating |
| *Key Bank | P.O. Box 93885 Cleveland, OH 44101-5885 | Garbanzo Mediterranean Grill, LLC | Checking | 0996 | PPP |
| *Key Bank | P.O. Box 93885 Cleveland, OH 44101-5885 | Garbanzo Mediterranean Grill Franchising, LLC | Checking | 4623 | Franchise-Operating |
| Royal Bank of Missouri | Royal Bank of Missouri 8021 Olive Blvd St. Louis, MO 63130 | Garbanzo Mediterranean Fresh Missouri, LLC | Checking | 4653 | |

*Key Bank is a U.S. Trustee, Region 13 Authorized Depository*

17