UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | Case No.: 20-43963-399 |
| | ) | Honorable Barry S. Schermer |
| **GARBANZO MEDITERRANEAN** | ) | Chapter 11 Proceeding |
| **GRILL, LLC,** *et al.*, | ) | |
| | ) | Hearing Date: August 17, 2020 |
| Debtors[1]. | ) | Hearing Time: 10:00 a.m. |
| | ) | Hearing Location: Courtroom 5 North |
| | ) | St. Louis, Missouri |
| | ) | |
| | ) | Robert E. Eggmann, Esq. |
| | ) | Thomas H. Riske, Esq. |
| | ) | Danielle A. Suberi, Esq. |
| | ) | Carmody MacDonald P.C. |
| | ) | 120 South Central, Suite 1800 |
| | ) | St. Louis, Missouri 63105 |
| | ) | (314) 854-8600 |
| | ) | ree@carmodymacdonald.com |
| | ) | thr@carmodymacdonald.com |
| | ) | das@carmodymacdonald.com |

**MOTION OF THE DEBTORS
FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO PAY PREPETITION OBLIGATIONS IN
THE ORDINARY COURSE OF BUSINESS TO (A) CRITICAL VENDORS
AND (B) 503(b)(9) CLAIMANTS; AND (II) GRANTING RELATED RELIEF**

COME NOW Garbanzo Mediterranean Grill, LLC, Garbanzo Mediterranean Fresh, LLC, Garbanzo Mediterranean Fresh Missouri, LLC and Garbanzo Mediterranean Grill Franchising, LLC, the above-captioned Debtors and Debtors in Possession (the "**Debtors**"), by and through their proposed undersigned counsel, hereby submit this motion (the "**Motion**") for the entry of an order (the "**Order**"), pursuant to sections 105(a), 363, 503(b)(9) and 507(a)(2) of title 11 of the United States Code (the "**Bankruptcy Code**") authorizing, but not directing, the Debtors to pay certain prepetition critical vendors in the ordinary course of business. In support of this Motion

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Garbanzo Mediterranean Grill, LLC (8872), Garbanzo Mediterranean Fresh, LLC (8872), Garbanzo Mediterranean Fresh Missouri, LLC (8872), and Garbanzo Mediterranean Grill Franchising, LLC (8872). The address of the Debtors' corporate headquarters is 7700 E. Arapahoe Road, Suite 270, Centennial, CO 80112.

the Debtors rely on the Declaration of James Park in Support of First Day Applications and Motions (the "**First Day Declaration**"), filed contemporaneously herewith, and further respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein are sections 105, 361, 362, and 363 of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 4001, 6003 and 6004.

## BACKGROUND

3. On August 12, 2020 (the "**Petition Date**"), each of the Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to operate their business and manage their properties as Debtors in Possession, pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee, examiner or official committee of unsecured creditors have been appointed in these Chapter 11 Cases.

5. The Debtors own and four operate quick service restaurants and catering and delivering business specializing in Mediterranean cuisine, including hummus, falafel, chicken and beef schwarmas, and salads on handmade pita and laffa. The Debtors also sell franchises nationally to third parties for the franchisees to own and operate the same quick service restaurants and catering and delivering business specializing in Mediterranean cuisine under the Debtors' name. The Debtors have 21 franchisees of which ten also do catering and delivering businesses.

6. Detailed information regarding the Debtors' business and the events leading to the Chapter 11 Cases is set forth in the First Day Declaration.

## RELIEF REQUESTED

7. By this Motion, the Debtors request entry of the Order, pursuant to sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (i) authorizing, but not directing, the Debtors to pay prepetition obligations in the ordinary course of business to (a) certain vendors, suppliers, service providers, and other similar entities that are essential to maintain the going concern value of the Debtors' enterprise (and as further defined, the "**Critical Vendors**" and their prepetition claims, the "**Critical Vendor Claims**") and (b) certain vendors holding claims that are entitled to statutory priority under section 503(b)(9) of the Bankruptcy Code (the "**503(b)(9) Claimants**", and collectively with the Critical Vendors, the **"Vendor Claimants"** and their prepetition claims the "**Vendor Claims**"); and (c) granting related relief.

## BASIS FOR RELIEF

**A. Payment of Critical Vendor Claims is Necessary to Ensure Continuation of the Debtors' Operations.**

8. The Debtors' business is dependent on Critical Vendors that are unaffiliated with the Debtors and are sole source or limited source suppliers, or provide a material economic advantage relative to other potential vendors. Without the Critical Vendors, the Debtors would not be able to operate. The Critical Vendors are integral to the Debtors' business and any lapse in services, even for a short duration, would significantly disrupt the Debtors' operations. Further, the use of replacement vendors, where available, would likely impose a significant hardship in that it would cause a spike in the Debtors' costs of operations or limit the Debtors' abilities to provide specialized products to their customers.

9. Debtors owe approximately $1 million to trade creditors as of the Petition Date, as addressed in the First Day Declaration. Of these trade creditors, there are certain Critical Vendors that hold Critical Vendor Claims against the Debtors. By this Motion, the Debtors seeks authority to pay Critical Vendor Claims (and Vendor Claims, as addressed below) in an aggregate amount not to exceed $250,000.00 (the "**Aggregate Claim Cap**") if the Debtors determine in their sole discretion that such immediate payment is necessary to prevent irreparable harm and significant disruption to the Debtors' business operations. The Critical Vendor Claims that Debtors currently seek authority to pay all fall within that stringent criteria.

10. Notwithstanding the foregoing, the Debtors reserve the right to seek to increase the Aggregate Claim Cap or to otherwise seek appropriate relief from this Court to satisfy Critical Vendor Claims in an amount greater than the Aggregate Claim Cap.

11. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a).

12. Courts regularly rely upon the "necessity of payment" doctrine, together with the bankruptcy court's broad grant of equitable authority set forth in section 105(a) of the Bankruptcy Code, in granting a debtor in possession the discretionary authority to pay certain prepetition claims "where payment is necessary to permit the effectuation of the rehabilitative purposes of the

Bankruptcy Code." *In re Sharon Steel Corp.,* 159 B.R. 730, 736 (Bankr. D. Del. 1993); *In re Just For Feet,* 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re NVR,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[U]nder 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to continued operation of business); *In re Eagle- Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (finding "necessity of payment" doctrine justifies payment of prepetition claims where, "payment is necessary to avert a serious threat to the Chapter 11 process."); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (confirming that section 105(a) can be used to "effectuate the policies and provisions of the Bankruptcy Code," including the payment of prepetition claims of creditors pursuant to 363(b)(1) of the Bankruptcy Code and the "necessity of payment" doctrine); *In re Chateaugay Corp.,* 80 B.R. 279, 282 (S.D.N.Y. 1987) (explaining that bankruptcy court's general equitable powers are broad enough to authorize payment of prepetition claims of critical vendors necessary for debtor's continued operation where debtor in possession's fiduciary duties so require); *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 574 n.8 (3d Cir. 2003) (noting, in *dicta,* that emergency critical vendor motions are routinely issued as part of the first day proceedings).

13.    Courts in this district regularly grant relief to pay critical vendors consistent with that which the Debtors are seeking in this Motion. *See, e.g., In re Foresight Energy LP*, No. 20-41308 (KAS) (Bankr. E.D. Mo. Apr. 7, 2020) [Docket No. 242] (authorizing payment of critical

vendors); *In re Payless Holdings LLC,* No. 19-40883-659 (KAS) (Bankr. E.D. Mo. Mar. 19, 2019) [Docket No. 600] (same); *In re Payless Holdings LLC,* No. 17-42267-659 (KAS) (Bankr. E.D. Mo. May 9, 2017) [Docket No. 600] (same); *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (BSS) (Bankr. E.D. Mo. Feb. 10, 2016) [Docket No. 96] (same); *In re Arch Coal, Inc.*, No. 16-40120-705 (CER) (Bankr. E.D. Mo. Jan. 13, 2016) [Docket. No. 71] (same).

14. Further, the Debtors' decision to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); *In re Trilogy Dev. Co., LLC,* 2010 Bankr. LEXIS 5636, at *3-4 (Bankr. W.D. Mo. 2010); *In re Channel One Comm. Inc.,* 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983)); *In re Global Crossing Ltd.,* 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.,* 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) is "a good business reason"). The business judgment rule is satisfied if the proposed action appears to enhance the debtor's estate. *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC),* 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003).

15. The Debtors' other creditors will be better off on account of the Debtors' ability to continue their operations with minimal disruption. To that end, the Debtors rely on timely and frequent delivery of the critical goods and services provided by the Critical Vendors and any interruption, however brief, would disrupt the Debtors' operations and potentially cause irreparable harm to their business and goodwill. The harm to the Debtors' estates by not having products or services provided by the Critical Vendors would far outweigh the cost of payment of the Critical Vendor Claims. As such, the Debtors believe that the relief sought in this Motion will not burden the Debtors but will help maximize the value of their estates.

16. Furthermore, the Debtors specialize in Mediterranean cuisine. So it follows that the Debtors provide special goods from specific vendors to its customer base and obtaining goods and services from replacement vendors and providers is difficult to impossible without impacting the very business provided by the Debtors. Many of the Debtor's vendors are not subject to contracts. As a result, Debtor would be unable to force those vendors to continue to perform. Accordingly, Debtor submits that it is appropriate for the Court to authorize the Debtor to satisfy the Critical Vendor Claims in its business judgment and subject to the Aggregate Claim Cap.

17. Finally, to the extent that any of the Critical Vendors have prepetition claims that are protected under Perishable Agricultural Commodities Act, those claims are entitled to payment immediately or, at worst, constitute administrative clams.

18. The relief requested herein with respect to the Critical Vendor Claims is necessary to avoid immediate and irreparable harm to the Debtors' estates and, consequently, in the best interests of their creditors and their estates, and such relief should be granted.

**B. The 503(b)(9) Claimants**

19. The Debtors have received certain goods from various 503(b)(9) Claimants within the 20 days leading up to the Petition Date. Many of the Debtors' relationships with the 503(b)(9) Claimants are not contractual, and the Debtors place orders as they need goods from the 503(b)(9) Claimants. As a result, the 503(b)(9) Claimants may refuse to supply new goods to the Debtors without first receiving payment on account of those undisputed 503(b)(9) Claims arising from the value of the goods that were received by the Debtors within the 20 days leading up to the Petition Date. The Debtors believe that certain of the 503(b)(9) Claimants could reduce the Debtors' existing trade credit—or demand payment for goods on a "cash on delivery" or "cash in advance" basis—thereby negatively impacting the Debtors' liquidity position.

20. Further, and as described below, the 503(b)(9) Claims are entitled to statutory priority for the goods received by the Debtors in the ordinary course of business within the 20 days prior to the Petition Date. Section 503(b)(9) of the Bankruptcy Code provides that "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business" are administrative claims against a debtor's estate. See 11 U.S.C. § 503(b)(9). The Debtors, therefore, are required to pay such 503(b)(9) Claims in full to confirm a chapter 11 plan. As previously mentioned, as of the Petition Date the Debtors owe approximately $1 million in trade debt , some of which is on account of 503(b)(9) Claims.

21. By this Motion, the Debtors seek authority to pay, in their discretion, the 503(b)(9) Claimants in the ordinary course of business from the Aggregate Claims Cap including on an interim basis.

22. Vendor Claims are entitled to the statutory priority for goods delivered to the Debtors in the ordinary course of business within 20 days before the Petition Date. Section 503(b)(9) of the Bankruptcy Code provides that claims for goods delivered to the Debtors in the ordinary course of business within 20 days after the Petition Date are administrative expense claims against the applicable Debtor's estate. *See* 11 U.S.C. § 503(b)(9). The Debtors, therefore, are required to pay such claims in full to confirm a plan of reorganization. *See Id*.; 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to administrative expense priority). Instead of paying such Vendor Claims on the effective date of a chapter 11 plan, the Debtors seek authority to pay the 503(b)(9) Claims during the pendency of these chapter 11 cases as they become due. The Bankruptcy Code requires payment in full of administrative expense claims. Thus,

payment of 503(b)(9) Claims under the Proposed Orders will effect only a change in the timing of such payments, not the amounts or priority thereof.

23. Because the 503(b)(9) Claimants are already familiar with the Debtors' past orders, operations, and business needs based on years of the Debtors' building relationships with such vendors, they are in the best position to provide the necessary goods and services to the Debtors, and are the most likely to do so on commercially reasonable terms. Finally, authorizing the Debtors to pay 503(b)(9) Claims pursuant to the terms set forth herein should eliminate the burden on this Court and the Debtors arising from numerous individual motions requesting payment on account of 503(b)(9) Claims.

24. Courts in this district have frequently authorized the payment of vendor claims entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code. See, e.g., *In re Foresight Energy LP*, No. 20-41308 (KAS) (Bankr. E.D. Mo. Apr. 7, 2020) [Docket No. 242] (authorizing payment of claims arising under section 503(b)(9)); In re Armstrong Energy, Inc., No. 17-47541-659 (KAS) (Bankr. E.D. Mo. Nov. 2, 2017) [Docket No. 92] (same); In re Noranda Aluminum, Inc., No. 16-10083-399 (BSS) (Bankr. E.D. Mo. Feb. 10, 2016) [Docket No. 96] (same); In re Arch Coal, Inc., No. 16-40120-705 (CER) (Bankr. E.D. Mo. Jan. 14, 2016) [Docket. No. 71] (same).

### C. Customary Trade Terms

25. In return for paying the Vendor Claims, the Debtors will use commercially reasonable efforts to require the Vendor Claimants to provide favorable terms in line with historical practice (the "**Customary Trade Terms**") for the postpetition delivery of goods and services or otherwise to continue supplying the Debtors with goods and services for the duration of these chapter 11 cases. The Debtors, therefore, request authority to condition payment of the

Vendor Claims upon such Vendor Claimants' agreement to continue supplying goods and services to the Debtors for the duration of these chapter 11 cases, in accordance with the Customary Trade Terms that are at least as favorable as those practices and programs that were in place prior to the Petition Date, as may be modified by any such Agreement.

26. Subject to the entry of the Proposed Final Order, the Debtors also seek unlimited authority to pay the Vendor Claims even if no Agreement has been executed should the Debtors determine, in their business judgment, that a formal Agreement is unnecessary to ensure such Vendor Claimant's continued performance on the Customary Trade Terms.

## NOTICE

27. Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the agent under the Debtors' Credit Agreement; (iii) the holders of the twenty (20) largest unsecured claims against the Debtors, and (iv) the Claimants listed on **Exhibit A**. Notice of this Motion and any order entered hereon will be served in accordance with Local Rules (collectively, the "**Notice Parties**"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief requested herein and such other and further relief as this Court deems just and proper.

Respectfully submitted,

CARMODY MACDONALD P.C.


By: /s/ *Robert E. Eggmann*
    ROBERT E. EGGMANN #37374MO
    THOMAS H. RISKE #61838MO
    DANIELLE SUBERI #59688
    120 S. Central Avenue, Suite 1800
    St. Louis, Missouri 63105
    (314) 854-8600
    (314) 854-8660 – FAX
    ree@carmodymacdonald.com
    thr@carmodymacdonald.com
    das@carmodymacdonald.com

PROPOSED ATTORNEYS FOR DEBTORS

**EXHIBIT A - VENDOR LIST**

| | |
|---|---|
| Accent Branding Solutions | 1401 Webster Ave<br>Fort Collins CO 80524 |
| Ecolab | P.O. BOX 70343<br>Chicago, IL 60673 |
| Patriot Print Fulfilment | 2221 E. Lamar Blvd #480<br>Arlington TX 76006 |
| SACHA Design | 277 Lyons Place<br>Renton, WA 98059 |
| Sysco St. Louis | 3850 Mueller Road<br>St. Charles, MO 63301 |
| Sysco Denver | P.O. Box 5566<br>Denver CO 80217-55660 |
| Rocky Mountain Spice | Rocky Mountain Spice Company<br>3850 Nome Street, Suite A<br>Denver CO 80239 |
| Select A Drink | Select Drink Inc.<br>5757 North Lindbergh Blvd.<br>Hazelwood MO 63042 |
| Partech | Partech<br>8383 Seneca Tpke<br>New Hartford NY 13413 |
| Red Arrow | 6500 S Quebec St # 300<br>Centennial CO 80111 |
| BECPOS | 5610 Ward Road<br>Arvada CO 80002 |
| Monkey Media Software | 502-815 Hornby Street<br>Vancouver BC V6Z 2E6 Canada |
| OLO | 285 Fulton St.,<br>New York, NY 10007 |
| Oracle America | Oracle America<br>500 Oracle Parkway<br>Redwood City CA 94065 |
| Hosted FTP | 100-51 Breithaupt Street<br>Kitchener, ON, Canada, N2H 5G5 |
| Hot Schedules (scheduling) | Hot Schedules<br>PO Box 848472<br>Dallas TX 75284-8472 |
| Partech | Partech<br>8383 Seneca Tpke<br>New Hartford NY 13413 |
| Paytronix | Paytronix<br>80 Bridget St.<br>Newton MA 02458 |
| Redbook Solutions | Red Book Solutions / Plan it Planner<br>33270 Collection Center Drive<br>Chicago IL 60693 |
| Restaurant Analytics Delivered, LLC | Restaurant Analytics Delivered LLC<br>31487 Niakwa Road<br>Evergreen CO 80439 |
| Sundell | Sundell & Associates, LLC<br>3530 W. Picket Line<br>Flagstaff AZ 86005 |

|  |  |
|---|---|
| Tattle | Tattle<br>57 Dyke Rd<br>Setauket NY 11733 |
| Terminix pest control | Terminix Processing Center<br>PO BOX 802155<br>Chicago IL 60680-2131 |